# In the United States Court of Federal Claims

No. 18-898T
(Pro Se)
(Filed: May 1, 2019)

| | |
|---|---|
| JAMES BOWERMAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) | Keywords: Tax Levy; Tax Refund; I.R.C. § 6511(a); I.R.C. § 6532(a)(1); Motion to Dismiss; Subject-Matter Jurisdiction <br><br> Received - USCFC <br><br> MAY 0 1 2019 |

*James P. Bowerman*, Arlington, VA, pro se.

*Katherine R. Powers*, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, with whom were *Mary M. Abate*, Assistant Chief, Court of Federal Claims Section, *David I. Pincus*, Chief, Court of Federal Claims Section, and *Richard E. Zuckerman*, Principal Deputy Assistant Attorney General, for Defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

James Bowerman brings this action challenging a tax levy executed on May 29, 2012 by the Internal Revenue Service ("IRS") for the 2009 tax year. The government has moved to dismiss Mr. Bowerman's complaint for lack of subject-matter jurisdiction on the theory that Mr. Bowerman's claim is untimely, that his due process claims are not money-mandating, and that he cannot bring a wrongful levy claim under I.R.C. § 7426.

The Court agrees that it lacks subject-matter jurisdiction over Mr. Bowerman's claims. Accordingly, the government's motion to dismiss is **GRANTED**.

## BACKGROUND[1]

### I.     Mr. Bowerman's 2009 Tax Return and the IRS's May 2012 Tax Levy

On April 26, 2010, James Bowerman filed his income tax return for tax year 2009 on Form 1040EZ ("the 2009 return"). Def.'s Mot. to Dismiss ("Def.'s Mot.") Ex. A, at A-1, Docket No. 11. He reported an adjusted gross income of $11,707 and taxable income of $2,357. Id. Mr. Bowerman claimed total payments and credits in the amount of $1,271 ($740 in federal income tax withheld as reported on forms W-2 and 1099, a $400 Making Work Pay Credit, and a $131 Earned Income Credit). Id. He requested a total tax refund of $1,035, id., which the IRS issued to him on May 17, 2010, Def.'s Mot. Ex. F, at F-2.

On February 22, 2011, the IRS sent Mr. Bowerman a CP2000 notice informing him that "[t]he income and payment information . . . on file does not match entries on your 2009 Form 1040EZ." Def.'s Mot. Ex. B, at B-1. The notice identified eight examples of payments or income that Mr. Bowerman did not report on his return for tax year 2009. The unreported items included: (1) $616 in tax withheld by the Connecticut Department of Labor, Employment Security Division; (2) $4 in tax withheld by JPMorgan Chase Bank; (3) $16 in interest from JPMorgan Chase Bank; (4) $4 in taxable dividends from Golden Gate LLC; (5) $6,576 in unemployment compensation from the Connecticut Department of Labor, Employment Security Division; (6) $19,020 in nonemployee compensation from Best Apartments Inc.; (7) $26 in taxable dividends from Schering-Plough Corporation; and (8) $26 in qualified dividends from Schering-Plough Corporation. Id. at B-11, B-13.[2] The IRS proposed several changes to Mr. Bowerman's tax liability for 2009, including: 1) a $5,806 tax increase; 2) a $620 payment increase; 3) $1,037 in penalties; and 4) $220 in interest if the outstanding balance of $6,443 was paid by March 24, 2011. Id. at B-1.

According to the IRS, it has no record of having received a response to the February 22, 2011 CP2000 notice. Def.'s Mot. at 2 n.2. The IRS therefore sent Mr. Bowerman a Notice of Deficiency dated May 16, 2011, in the amount of $6,443 ($1,037 of which was an accuracy-related penalty). Def.'s Mot. Ex. C, at C-3, C-5. The IRS informed Mr. Bowerman that if he wished to challenge the determination before making a payment, he must file a petition with the United States Tax Court within ninety days from the date of the letter. Id. at C-3.

---

[1] The facts in this section are based on the allegations in the complaint, which the Court accepts as true for purposes of ruling on the motion to dismiss, as well as documents submitted by the parties in their respective filings.

[2] The February 2011 CP2000 notice purports to list income information received by the IRS that did not match Mr. Bowerman's tax return. However, the $26 in qualified dividends from the Schering-Plough Corporation is described as being "included on your return." Def.'s Mot. Ex. B, at B-13 (capitalization altered). The Court is unsure why, if indeed this $26 in qualified dividends was somehow included in Mr. Bowerman's return, it appears on the CP2000 notice. In any event, this apparent discrepancy does not affect the Court's jurisdiction, which is the subject of the government's motion to dismiss.

2

On February 28, 2012, the IRS issued a Collection Due Process Notice, which IRS records indicate went refused or unclaimed. Def.'s Mot. Ex. F., at F-2. It levied on the amount of $7,296.03 from Mr. Bowerman's account on May 29, 2012. Id. at F-3.

## II. Mr. Bowerman's Amended Return and the IRS's Disallowance of His Claim

On April 6, 2015, some two years and ten months after the tax levy, the IRS's Automated Underreporter ("AUR") Reconsideration Unit in Fresno, Georgia received an amended return for tax year 2009 from Mr. Bowerman. Def.'s Mot. Ex. D, at D-1, D-3.[3] Mr. Bowerman stated in a cover letter accompanying the amended return that he had "corrected th[e] return to include all income and expense." Id. at D-1. In his amended return, he reported a new adjusted gross income of $19,312, a tax liability of $1,686, withholding of $1,360, and a Making Work Pay Credit of $400. Id. at D-4. He requested a refund of $74. Id.[4]

On July 8, 2015, the IRS sent Mr. Bowerman a letter in which it "partially disallowed" his "claim for credit" in the amount of $4,225. Def.'s Mot. Ex. E, at E-1. As the government explains, $4,225 represents the difference between the total assessed tax against Mr. Bowerman for his deficiency (which was $5,911) and the total tax liability of $1,686 he claimed on his 2009 amended return. Def.'s Mot. at 3 n.3.

The result of the IRS's acceptance of the amended return is that Mr. Bowerman made a $4,225 overpayment of his tax liability for 2009. See id.; Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") Ex. G, at G-4, Docket No. 20. Nonetheless, the IRS stated in its July 8, 2015 letter that it had "allowed only $.00 of the claim" because the amended return was filed more than two years after Mr. Bowerman paid his 2009 taxes. Def.'s Mot. Ex. E, at E-1. The IRS informed Mr. Bowerman that he could appeal the disallowance by filing an appeal with the Appeals office. Id.

## III. Mr. Bowerman's Appeal

In a letter dated August 4, 2015 (received by the IRS on August 12, 2015) Mr. Bowerman appealed the disallowance of his claim. Def.'s Mot. Ex. G, at G-1. He stated that "[t]he issue is not a statute of limitations issue, but rather a 'wrongful levy' action[] under IRC Section 6343(b)." Id. He explained that he had "moved during the years in question and apparently did not receive all income reports." Id. Mr. Bowerman further explained: 1) that "the AUR Unit made an adjustment to the return based on income reported to the IRS"; 2) that he had filed a corrected return "including all income once reconciled with the IRS notices"; and 3) that "[i]n the interim, the IRS levied not only erroneous taxes, but related penalty and interest." Id. He requested that "$7,296.03, wrongfully levied on May 29, 2012, be refunded" because it "was not tax 'paid' by the taxpayer, but tax wrongfully collected by the IRS." Id.

The IRS denied Mr. Bowerman's appeal on October 13, 2016. Compl. Ex. 1, at 3, Docket No. 1-1 (letter from Appeals Team Manager stating that "[b]ased on the information submitted,

---

[3] The tax return was dated March 31, 2015.

[4] As the government notes, the amended return did not take into account the $1,035 tax refund Mr. Bowerman had already received based on his original 2009 tax return. Def.'s Mot. at 3.

3

there is no basis to allow any part of your claim"). Mr. Bowerman was informed of his option to file suit in either the United States District Court or the United States Court of Federal Claims, but was cautioned that he "must file the suit within two-years from the date on the letter denying your claim, which the Atlanta IRS campus mailed to you on March 15, 2016." Id.[5] Finally, the letter emphasized that "[y]our two-year period has **NOT** been shortened or extended by our reconsideration of your claim." Id.

In an undated letter that was marked received by the IRS's Atlanta AUR office on August 2, 2017, Mr. Bowerman once again appealed what he characterized as "a wrongful levy in the amount of 7,296.03 taken in May of 2012" and requested that "of the original levy in the amount of 7,296.03, $6,261.03 be returned . . . [which was] the total of the levy minus a return I received that year in the amount of $1,035.00." Def.'s Mot. Ex. H, at H-1.

Mr. Bowerman explained in this letter that he did not receive the February 22, 2011 CP2000 notice because he had moved from the address where the notice was sent. Id. He stated that he learned of the intent to levy in May 2012 when a letter was sent to his new address. Id. Mr. Bowerman further noted that he had experienced difficulty securing assistance from the Savannah IRS office after he learned of the intent to levy in May 2012. Id. at H-1 to H-2. He also explained that after the visit to that office, it took him several months to find an accountant and "then almost 1.5 years just to get all the paperwork from the IRS, file responses, etc." before he could file an amended return. Id. at H-2. Mr. Bowerman stated that he had filed the amended return "within a 3 year window of the levy as that was [his] understanding of the statu[t]e of limitations." Id. The record does not reveal whether or not the IRS ever responded to this letter.

## IV.   Action in Tax Court

On March 15, 2018, Mr. Bowerman filed a complaint with the United States Tax Court in which he stated that "[t]his matter is in regards to a wrongful levy taken on May 29th of 2012 for $7,296.03 regarding the 2009 tax year." Compl. Ex. 1, at 1. He contended that "[d]ue to failures in the IRS administrative process [he] was not given the opportunity to appeal in a timely fashion." Id.

The Tax Court dismissed the complaint for lack of jurisdiction on May 15, 2018, finding that "no notice of deficiency or notice of determination was issued to petitioner for tax year 2009 that would permit petitioner to invoke the Court's jurisdiction." Order of Dismissal for Lack of Jurisdiction, Bowerman v. Comm'r of Internal Revenue, Docket No. 5294-18S (T.C. May 7, 2018). The order of dismissal indicates that Mr. Bowerman did not object to the Tax Court granting the government's motion to dismiss. See id.

---

[5] The record before the Court does not include a copy of the referenced letter that was mailed to Mr. Bowerman in March 2016. Nor does the IRS Transcript in the record covering actions taken with respect to tax year 2009 include any actions taken in March 2016 (although it does identify a "claim disallowed" on April 11, 2016). Def.'s Mot. Ex. F., at F-3.

## V. The Present Action

Mr. Bowerman filed the present suit on June 20, 2018. Compl. at 1. In his complaint, Mr. Bowerman states that he "wish[es] to appeal under Code sections 6320(c) and 6330(d)." Id. He asserts that his "reasonable cause to challenge the IRS's determination is that of a due process argument." Id. Specifically, he alleges that "[d]ue to failures in the IRS administrative process [he] was not given the opportunity or information to appeal in a timely fashion and collect [his] return." Id. He argues that "[t]he IRS should not have levied on this case as it imposed a clear hardship" on him and because he "never received the proper notices." Id. at 2. He asks the Court to "reverse the levy" or to "apply the credit for the 2009 tax year back to [his] account." Id. at 3.

After being granted three extensions of time to answer the complaint, Docket Nos. 5–10, the government filed the present motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") on November 2, 2018, Docket No. 11. The government argues that the Court does not have jurisdiction to award equitable relief to reverse the allegedly wrongful tax levy. Def.'s Mot. at 8. Further, according to the government, the Court lacks jurisdiction over Mr. Bowerman's due process claims because the Due Process Clause is not money-mandating. Id. at 9. To the extent Mr. Bowerman requests recovery for an overpayment of taxes, the government argues that such a claim is untimely because his amended return did not meet the requirements of I.R.C. § 6511(a). Id. As an alternative argument, the government states that the suit in this court is untimely pursuant to I.R.C. § 6532(a)(1) because Mr. Bowerman failed to file a claim within two years of the date the IRS sent a notice of disallowance. Id. at 13.

Mr. Bowerman sought several extensions of his own to file a response, which the Court granted. Docket Nos. 12–17. The motion is now fully briefed and ripe for review. See Docket Nos. 20, 23.

## DISCUSSION

### I. Standards for Motions to Dismiss Under RCFC 12(b)(1)

In considering a motion to dismiss for lack of subject-matter jurisdiction, the Court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The Court may, however, "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). It is well established that complaints filed by pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, even pro se plaintiffs must persuade the Court that jurisdictional requirements have been met. Harris v. United States, 113 Fed. Cl. 290, 292 (2013).

### II. Jurisdiction

The Tucker Act provides that the Court of Federal Claims "shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). It is well established that this jurisdictional grant

5

extends to suits for the refund of taxes remitted to the Treasury. See Ont. Power Generation v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); Shore v. United States, 9 F.3d 1524, 1525 (Fed. Cir. 1993).

This Court's jurisdiction does not, however, extend to claims by a taxpayer challenging what he alleges to be an unlawful levy. Wade v. United States, 138 Fed. Cl. 276, 278 (2018) (observing that "jurisdiction over claims of wrongful levies brought pursuant to § 7426 is vested exclusively in the district courts, and claims under this statute must be brought by a third party, not by the party against whom the tax was assessed") (citing 26 U.S.C. § 7426(a)(1); Simmons v. United States, 127 Fed. Cl. 153, 161 (2016)). This Court, accordingly, lacks jurisdiction over Mr. Bowerman's request that the tax levy be "reversed" on the grounds that the procedures the IRS employed in executing it violated the Due Process Clause.[6]

Moreover, the Court's exercise of jurisdiction over suits for the refund of taxes is subject to I.R.C. § 7422(a). That section provides that:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

I.R.C. § 7422(a).

The time limits for filing a claim for a refund or credit are set forth at § 6511(a), which states that a taxpayer must file such a claim with the Secretary of the Treasury within the later of "3 years from the time the return was filed or 2 years from the time the tax was paid." Further, "unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund . . . may not be maintained in any court." United States v. Dalm, 494 U.S. 596, 602 (1990).

In this case, Mr. Bowerman filed his 2009 tax return on April 26, 2010 and his last payment for the 2009 tax year, which occurred via levy, was on May 29, 2012. Def.'s Mot. Ex. A, at A-1; Def.'s Mot. Ex. F., at F-3. Therefore, the deadline for filing an administrative refund request was May 29, 2014. Mr. Bowerman, however, did not file his administrative refund request until April 6, 2015, almost eleven months after the deadline expired.

Mr. Bowerman contends that—notwithstanding his failure to file a timely administrative refund request—he is entitled to invoke the "informal claim" doctrine, under which "a timely claim with purely formal defects is permissible if it fairly apprises the IRS of the basis for the claim within the limitations period." Computervision Corp. v. United States, 445 F.3d 1355, 1364 (Fed. Cir. 2006). Such timely informal refund claims have been found sufficient to satisfy

---

[6] To the extent Mr. Bowerman seeks an award of damages based on a violation of the Due Process Clause, the Court lacks jurisdiction to grant it. LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (providing that the Due Process Clause is not money-mandating).

6

§ 6511's requirements where they "have a written component" and where they "adequately apprise the [IRS] that a refund is sought and for certain years." Id. at 1365 (citing Am. Radiator & Standard Sanitary Corp. v. United States, 318 F.2d 915, 920 (Ct. Cl. 1963)) (internal quotation marks omitted); see also Arch Eng'g Co. v. United States, 783 F.2d 190, 192 (Fed. Cir. 1986).

Here, Mr. Bowerman relies upon a fax he sent to the IRS on April 13, 2012, in which he advised that he had found a "letter from the IRS indicating a balance due" at a previous address and requested that someone at the agency contact him. Pl.'s Opp'n Ex. H, at H-5. But this letter does not identify the tax year about which Mr. Bowerman was inquiring; nor does it provide any indication that it was his intent to challenge any IRS determination. See Fremuth v. United States, 129 Fed. Cl. 684, 689 (2016) (informal claims doctrine did not apply where a three-sentence, undated letter did not demand payment or indicate a basis for the claim); Buser v. United States, 85 Fed. Cl. 248, 260 (2009) (finding that the informal claim doctrine did not apply where the written component of a purported informal claim "d[id] not request a refund of taxes paid," failed to "reference any particular tax year with specificity," and contained "no language that c[ould] be construed as a request for a refund"); Mobil Corp. v. United States, 67 Fed. Cl. 708, 717 (2005) (noting that documents "which do not apprise the IRS that the taxpayer is presently seeking a refund do not constitute an informal refund request"); cf. Pennoni v. United States, 86 Fed. Cl. 351, 362–63 (2009) (finding that the informal claim doctrine applied where the taxpayer had several conversations with IRS representatives regarding the claim at issue and sent a fax that set forth the basis of that claim).

Mr. Bowerman also references his visit to the IRS field office in Savannah, Georgia on May 3, 2012 during which he allegedly attempted to secure clarification regarding the IRS's intent to levy on his account. Pl.'s Opp'n at 3. According to Mr. Bowerman, on that occasion, he showed an IRS representative "a written request with the tax year and the intent to seize property" but was told "there was nothing that could be done and no one he[re] could help." Id. Although not entirely clear, the Court understands the "written request" to which Mr. Bowerman refers to be correspondence from the IRS regarding its intent to levy on his account. Furthermore, based on Mr. Bowerman's own account of the visit, it appears that its purpose was to seek more information about that letter. See id. He does not allege that during this visit he supplied the IRS with a written statement which fairly apprised the agency of his intent to challenge the levy; nor does such a written statement appear in the record.

In fact, it appears Mr. Bowerman may have contacted the IRS on several occasions seeking more information about the tax levy. See Def.'s Mot. Ex. H, at H-2 ("[I]t took a very long time to clarify this [] matter in terms of gathering paperwork and getting information from the IRS."). Mr. Bowerman does not indicate when these communications took place or whether they occurred before May 29, 2014, when the § 6511(a) deadline elapsed. He also does not specify that he presented the IRS with anything in writing that would have adequately apprised it of his claim for a refund for tax year 2009.

In any event, even assuming that Mr. Bowerman were entitled to the benefit of the informal claim doctrine, I.R.C. § 6532(a)(1) establishes a separate limitations period within which a taxpayer must file a suit in the Court of Federal Claims. It provides as follows:

> No suit or proceeding . . . for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim . . . unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

I.R.C. § 6532(a)(1). Thus, if the IRS disallows the taxpayer's administrative refund request, the taxpayer must file suit within two years of the date that the IRS mailed the taxpayer the notice of that disallowance; otherwise, the court will lack jurisdiction. Harper Int'l Corp. v. United States, 120 Fed. Cl. 66, 72–73 (2015) (dismissing case for lack of subject-matter jurisdiction where plaintiff failed to file refund suit within two years of notice of disallowance); Ishler v. United States, 115 Fed. Cl. 530, 534–35 (2014) (characterizing the statute of limitations set forth in § 6532(a)(1) as a jurisdictional prerequisite); Brach v. United States, 98 Fed. Cl. 60, 67–68 (2011) (same); see also Rosser v. United States, 9 F.3d 1519, 1523 (11th Cir. 1993) ("[T]he two-year statute of limitations laid out in 26 U.S.C. § 6532(a)(1) begins to run in every case on the date the IRS mails the taxpayer a notice of disallowance, whether or not the taxpayer actually receives the notice.").

In this case, the IRS mailed Mr. Bowerman a notice of partial disallowance on July 8, 2015, Def.'s Mot. Ex. E, at E-1, and may have also sent another similar notice on March 15, 2016, see Compl. Ex. 1, at 3. The IRS transcript indicates that his claim was formally disallowed on April 11, 2016. Def.'s Mot. Ex. F, at F-3.

Because he did not file the present suit until June 20, 2018, Mr. Bowerman's action is untimely under § 6532(a)(1) no matter which of the foregoing three dates the Court uses as the date that the IRS sent him a notice of disallowance. Therefore, even assuming that he had filed a timely administrative claim, Mr. Bowerman's suit would nonetheless be time-barred.[7]

---

[7] Mr. Bowerman also appears to argue that his claim before the Court is timely because he filed a claim with the Tax Court within two years of receiving the notice of disallowance. See Pl.'s Opp'n at 5 ("[T]he pla[i]ntiff followed the instructions given to him by IRS officials to file in Tax Court by March 15th, 2018."). This Court's jurisdictional limitation in § 6532(a), however, is not extended by the filing of a claim in the Tax Court.

8

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss for lack of subject-matter jurisdiction is **GRANTED**. The complaint is **DISMISSED without prejudice**. The Clerk is directed to enter judgment accordingly. Both sides shall bear their own costs.

**IT IS SO ORDERED.**

*[signature]*

ELAINE D. KAPLAN

Judge